Rhonda R. Trotter (SBN 169241)
 Rhonda.Trotter@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000

Christopher J. Renk (*pro hac vice* to be filed)
 Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
 Michael.Harris@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300

*Attorneys for Plaintiff Nike, Inc.*
*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC.,<br><br>     Plaintiff,<br><br> v.<br><br>LA LA LAND PRODUCTION & DESIGN, INC.<br><br>     Defendant. | Case No. 2:21-cv-0443<br><br>**COMPLAINT FOR:**<br><br>**(1) Direct and/or Contributory Trademark Infringement in Violation of 15 U.S.C. § 1114**<br>**(2) Direct and/or Contributory False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**<br>**(3) Direct and/or Contributory Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**<br>**(4) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***<br>**(5) Direct and/or Contributory Common Law Trademark Infringement and Unfair Competition**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Nike, Inc. ("Nike"), for its Complaint against Defendant La La Land Production & Design, Inc., ("La La Land") alleges as follows:

**PRELIMINARY STATEMENT**

1.     Over the past 50 years, Nike has built an iconic and distinctive brand for its products, a significant aspect of which is the development of distinctive trademarks that consumers associate with Nike's products. Unfortunately, various bad actors in the U.S. and abroad have sought to wrongfully trade off of Nike's famous brand and dupe consumers into purchasing fake Nike products.  These bad actors include not only those who sell these illegal fakes directly to consumers, but various others in the supply chain, including manufacturers and distributors, who provide material assistance to direct-to-consumer infringers. By this Complaint, Nike seeks to hold accountable all bad actors in the supply chain of infringing products, including those acting behind-the-scenes who play a critical and necessary role in the sale of fake Nike products.

2.     Launched over 30 years ago, the Nike Dunk is now recognized as one of the most iconic and influential sneakers of all time.

3.     Today, Nike Dunks—especially limited-edition collaborations—are coveted by sneakerheads throughout the world.  For example, the 2005 limited-edition Stüssy x Nike SB Dunk Low pictured below currently sells for thousands of dollars in the secondary sneaker market.



4.     This prized Dunk embodies the DNA of sneaker culture—it is original, authentic, and creative. Nike embraces those qualities. As such, Nike protects its iconic sneaker designs, and its intellectual property in those designs, by rooting-out

bad actors that undermine the DNA of sneaker culture by manufacturing, promoting and selling fakes.

5.     These bad actors include not only the individuals and companies who sell fake sneakers directly to consumers, but also the entities who provide manufacturing, sourcing, and other production/design services to the direct-to-consumer sellers. Many sellers of fake sneakers lack the resources and connections to manufacture, design, and source the products entirely by themselves. Companies acting behind-the-scenes provide these services and play a critical and necessary role in such unlawful activity.

6.     In order to adequately protect Nike's valuable intellectual property rights, its enforcement of such rights must extend up the supply chain—beyond direct-to-consumer sellers—to actors who are participants in and the moving forces behind the infringing activities of fake sneaker sellers. Indeed, without the assistance provided by such actors, the unlawful sale of fake Nike sneakers would often not be possible.

7.     La La Land is one of those bad actors. Specifically, La La Land manufactures, distributes, sources, sells, and/or supplies footwear products that infringe upon Nike's intellectual property rights to others who subsequently sell those products to consumers.

8.     For example, La La Land manufactures and provides production and design services to companies such as Warren Lotas LLC ("Warren Lotas"). Warren Lotas is a California-based company that has promoted and sold various fakes of coveted Nike Dunks supplied by La La Land. The table below shows examples of fakes Warren Lotas purchased from La La Land next to genuine Nike Dunks.

///

///

///

///

///

COMPLAINT

| Genuine Nike Dunks | Fakes Purchased from La La Land |
|---|---|
|  Stüssy X Nike SB Dunk Low "Cherry" |  Warren Lotas Freddy Broccolini Chanclas |
|  Nike SB Dunk Low Classic Green/Black/White/Red |  Warren Lotas Toxic Green |
|  Nike SB Dunk Low "J-Pack Chicago" |  Warren Lotas SB Dunk Low Jason |

9.    Additionally, La La Land offered to sell over 20,000 pairs of fake versions of Nike's famous "SB Dunk Low NYC Pigeon" sneakers to Warren Lotas, but the sale was thwarted in October 2020 when Nike filed suit in this Court against Warren Lotas.  The table below shows the fake sneakers La La Land offered to sell Warren Lotas next to genuine Nike SB Dunk Low NYC Pigeon sneakers.

| Nike SB Dunk Low NYC Pigeon | Warren Lotas X Staple Pigeon OG |
|---|---|
|  |  |

- 4 -

COMPLAINT

10.   Sneakers bearing Nike's trademarks that La La Land manufactures, sources, or otherwise provides, such as the sneakers shown above that La La Land sold to Warren Lotas, cause confusion in the marketplace regarding whether they are legitimate authorized customizations or illegal fakes. By supplying Warren Lotas with fake shoes using Nike's registered Dunk trade dress and a mark that is confusingly similar to Nike's famous Swoosh design, La La Land knowingly participated in a scheme to intentionally create confusion in the marketplace and capitalize on it.

11.   Nike files this lawsuit in an effort to hold bad actors in the supply chain accountable for their critical and integral role in the infringing activities of fake sneaker sellers. Suppliers of fake sneakers such as La La Land are uniquely equipped with connections and manufacturing resources that direct-to-consumer sellers lack, and must be held accountable for enabling the widespread infringement of fake sneaker sellers such as Warren Lotas.

## THE PARTIES

12.   Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

13.   Upon information and belief, La La Land Production & Design, Inc. is a company organized under the laws of the State of California with a principal place of business at 1701 South Santa Fe Blvd, Los Angeles, California 90021.

## JURISDICTION AND VENUE

14.   This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under statutory and common law of unfair competition. This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

15.   On information and belief, this Court may exercise personal jurisdiction over La La Land at least because La La Land resides in this District, La La Land's

COMPLAINT

principal place of business is located within this District, La La Land does business in this District, and La La Land has committed acts of infringement at issue in this Complaint in this District.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because La La Land resides in this District, La La Land's principal place of business is in this District, La La Land does business in this District, La La Land is subject to personal jurisdiction in this District, and La La Land has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

**A.    NIKE**

17.    Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.

18.    Nike is the largest seller of athletic footwear and apparel in the world.

19.    Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees and sales representatives in virtually all countries around the world.

20.    Nike uses trademarks on nearly all of its products.

21.    Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

22.    As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights.

///

///

///

COMPLAINT

**B.    NIKE'S SWOOSH DESIGN MARK**

23.    One of Nike's most iconic assets is the Swoosh design:  .

24.    The U.S. Court of Appeals for the Ninth Circuit has referenced the Swoosh design as an example of a "famous trademark [that has] assumed an exalted status….Consumers sometimes buy products bearing marks such as the Nike Swoosh…for the appeal of the mark itself, without regard to whether it signifies the origin or sponsorship of the product." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006).

25.    Nike has continuously promoted and sold products bearing the Swoosh design since 1971, including in connection with dozens of iconic products.

26.    Nike has used, and continues to use, the Swoosh design on almost all of its products, and in connection with its retail sales of those products.

27.    Nike has also promoted and sold products bearing the Swoosh design in various orientations and placements.

28.    Nike has sold billions of products bearing the Swoosh design in the United States, accounting for hundreds of billions of dollars in revenue.

29.    Nike has spent tens of billions of dollars promoting Swoosh design branded products in the United States.

30.    Nike advertises and promotes products bearing the Swoosh design through a wide variety of traditional and non-traditional means, including print advertising, event sponsorship, and athlete and team endorsements, to name a few.

31.    Nike also provides the official uniforms of the National Football League, the National Basketball League ("NBA"), and Major League Baseball, all of which prominently bear the Swoosh design.

32.    As a result of Nike's promotional and sales efforts over the past nearly fifty years, the Swoosh design is one of the most famous, recognizable, and valuable trademarks in the world.

COMPLAINT

33.    The Swoosh design has received unsolicited publicity and praise among consumers and in the media.

34.    The Swoosh design has received judicial and administrative recognition as a famous, recognizable, and valuable trademark.

35.    Nike has registered the Swoosh design on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services. Relevant to this action, Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 977,190 | | Jan. 22, 1974 | Athletic shoes with or without spikes | 1 |
| 1,284,385 | | Jul. 3, 1984 | Athletic and casual clothing | 2 |
| 1,323,342 | | Mar. 5, 1985 | Footwear | 3 |
| 1,323,343 | | Mar. 5, 1985 | Footwear | 4 |
| 1,990,180 | | Jul. 30, 1996 | Full line of sports clothing | 5 |

36.    Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 977,190, 1,284,385, 1,323,342, 1,323,343, and 1,990,180 are incontestable and constitute conclusive evidence of the validity of the Swoosh design mark, Nike's ownership of the Swoosh design mark, and Nike's exclusive right to use the Swoosh design mark.

C.    **NIKE'S DUNK WORD MARK AND DUNK TRADE DRESS**

37.    The Nike Dunk sneaker began as a basketball sneaker in the 1980s.

38.    Nike introduced the Dunk sneaker in 1986 in connection with its College Colors Program. College basketball players had typically worn single color shoes (e.g., white or black). But Nike's College Colors Program offered schools the

- 8 -

COMPLAINT

1  opportunity to have shoes that mirrored their school colors. Nike's original "Be True
2  to Your School" advertisement for its College Colors Program is reproduced below.



15  39.   Nike's College Colors Program became wildly popular. At that time in
16  the 1980s, college basketball was reaching new heights among a wide age range of
17  athletes and fans. From east to west, rivalries were strong and network TV brought
18  college hoops, and Nike's Dunk sneakers, to the masses.

19  40.   The Dunk's adoption and popularity eventually spread beyond basketball
20  culture as the skateboard community organically adopted the Dunk making it a skate
21  icon by the 2000s. From there, the Dunk crossed over sports and fashion, and today
22  it is recognized as one of the most iconic and influential sneakers of all time.

23  41.   Nike drove the iconic status the Dunk enjoys today, in part, through
24  limited-edition collaborations with designers, artists, and other creatives. For
25  example, in 2005, Nike collaborated with Stüssy to create the limited-edition Stüssy
26  x Nike SB Dunk Low, which was released in 2005 as part of Nike's "Team Manager"
27  series. The Stüssy x Nike SB Dunk Low was one of several collaborations between
28  Nike and others resulting in the release of limited-edition Nike Dunks in 2005.

- 9 -

COMPLAINT

42.    Another limited-edition collaboration was that between Nike and Jeff Staple, Founder and Creative Director of Staple Design and Reed Space, in 2005 to create the limited-edition Nike SB Dunk Low NYC Pigeon. Nike released 150 pairs of the Nike SB Dunk Low NYC Pigeon at Reed Space's New York storefront. A large crowd camped-out hoping to get a pair, the New York City Police were called, and the release made the cover of the New York Post. The event paved the way for today's sneaker culture that includes resellers, authorized post-sale customizations, and dedicated secondary markets. In fact, the Nike SB Dunk Low NYC Pigeon has been referred to as the "sneaker that started it all," ultimately declaring the birth of sneaker culture.

43.    Since the launch of the Dunks in 1986, Nike has continuously and substantially exclusively used the DUNK word mark and promoted and sold sneakers bearing the Dunk trade dress.

44.    Nike has sold many tens of millions of Dunks in the United States, accounting for hundreds of millions of dollars in revenue.

45.    Nike has also registered the DUNK word mark and the Dunk trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 3,780,236 | DUNK | Apr. 27, 2010 | Footwear | 6 |
| 3,711,305 |  | Nov. 17, 2009 | Footwear | 7 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 8 |

46.    Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 3,780,236, 3,711,305, and 3,721,064 are incontestable and constitute conclusive

COMPLAINT

evidence of the validity of the DUNK word mark and the Dunk trade dress, Nike's ownership of the DUNK word mark and the Dunk trade dress, and Nike's exclusive right to use the DUNK word mark and the Dunk trade dress.

**D.    NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL**

47.    Nike's Swoosh design mark, DUNK word mark, and Dunk trade dress are collectively referred to in this Complaint as the "Asserted Marks."

48.    Nike maintains strict quality control standards for its products bearing the Asserted Marks. Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

49.    Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill. Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

**E.    LA LA LAND'S UNLAWFUL ACTIVITIES**

50.    La La Land has attempted to capitalize on the strength and fame of Nike and its Asserted Marks by manufacturing and supplying footwear bearing the Asserted Marks and/or confusingly similar marks (the "Infringing Products") to direct-to-consumer sellers of fake Nike sneakers.

51.    La La Land's website describes itself as a "manufacturing gem in downtown LA's exciting Arts District," and touts the ability to label its products with "Made In LA" / "Made in USA." *See* http://lalaland-design.com/.   La La Land promotes its ability to manufacture "a wide range of shoes, from boots to sandals to sneakers and everything in between."  *See* http://lalaland-design.com/shoes/.

52.    One of La La Land's customers is a California-based company called Warren Lotas LLC, which purchased Infringing Products from La La Land in at least mid-2020 and subsequently sold and/or offered to sell those products to consumers.

COMPLAINT

The Infringing Products sold by La La Land to Warren Lotas include at least products known and offered for sale or sold as the Warren Lotas Freddy Broccolini Chanclas, the Warren Lotas Toxic Green, the Warren Lotas Jason Voorhees Dunk Low, and any other footwear products that bear the Asserted Marks and/or confusingly similar marks. Examples of Infringing Products are pictured below next to the Asserted Marks and genuine Nike products bearing the Asserted Marks.



| Asserted Marks | Genuine Dunks | Infringing Products |
|---|---|---|

53.   Upon information and belief, La La Land manufactures, distributes, sources, sells, and/or supplies Infringing Products bearing the Asserted Marks and/or confusingly similar marks, to customers such as Warren Lotas and others.

54.   For example, on May 6, 2020, La La Land sold 1,500 pairs of Jason SB

COMPLAINT

971fba26964f9389

Dunk Low Sneakers to Warren Lotas, as shown by a La La Land invoice to Warren Lotas totaling $115,500.00. A true and correct copy of the May 6, 2020 La La Land invoice is attached hereto as **Exhibit 1**.

55.    Further, on June 24, 2020, La La Land sold 2,001 pairs of Jason SB Dunk Low Toxic Green Sneakers to Warren Lotas, as shown by a La La Land invoice to Warren Lotas totaling $162,081.00. A true and correct copy of the June 24, 2020 La La Land invoice is attached hereto as **Exhibit 2**.

56.    Additionally, on August 17, 2020, La La Land sold 20,574 pairs of Freddy Broccolini Chanclas Sneakers to Warren Lotas, as shown by a La La Land invoice to Warren Lotas totaling $1,522,476.00. A true and correct copy of the August 17, 2020 La La Land invoice is attached hereto as **Exhibit 3**.

57.    La La Land's Infringing Products are not genuine Nike products. Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize La La Land to make, promote, advertise, market, or sell the Infringing Products.

58.    La La Land's Infringing Products travel in the identical channels of trades and are sold to identical consumers as Nike's genuine products.

59.    La La Land has taken systematic steps in an attempt to falsely associate its Infringing Products with Nike. La La Land has attempted to capitalize on Nike's valuable reputation and customer goodwill by using the Asserted Marks and/or confusingly similar marks, and inducing others to do the same, in a manner that is likely to cause consumers and potential customers to believe that the Infringing Products are associated with Nike, when they are not.

60.    La La Land has intentionally created confusion in the marketplace by, among other things, using Nike's Dunk trade dress, using a mark that is confusingly similar to Nike's famous Swoosh design, and inducing others to do the same.

///

///

COMPLAINT

61. Indeed, there is confusion in the marketplace regarding whether La La Land's Infringing Products are legitimate authorized customizations or illegal fakes, as evidenced by at least the example consumer commentary below.



62. Upon learning of the Infringing Products, Nike filed a complaint for trademark infringement, false designation of origin/unfair competition, trademark dilution, unfair competition, and common law trademark infringement against Warren Lotas in this Court on October 14, 2020. *See Nike v. Warren Lotas*, Case No. 2:20-cv-09431 (C.D. Cal. Oct. 14, 2020).

63. On December 14, 2020, this Court entered a Consent Judgment and Permanent Injunction against Warren Lotas for trademark infringement, false designation of origin/unfair competition, trademark dilution, unfair competition, and common law trademark infringement, permanently enjoining Warren Lotas from engaging in, *inter alia*, manufacturing, promoting, advertising, distributing, offering for sale, or selling any products, including but not limited to the Infringing Products depicted above, which are likely to cause confusion or to cause mistake or to deceive

- 14 -

persons into the erroneous belief that the Infringing Products are sponsored, licensed, authorized, or are connected or affiliated in some way with Nike or the Asserted Marks. A true and correct copy of this Court's Consent Judgment and Permanent Injunction is attached hereto as **Exhibit 4**.

64.    Unless stopped, La La Land's Infringing Products, La La Land's use of the Asserted Marks, and La La Land's contribution and/or inducement of others to do the same will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary sneakers markets.

65.    La La Land's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of the Infringing Products.

66.    La La Land's actions alleged herein are intended to cause consumers and potential customers to believe that La La Land's and/or its customers' businesses and products are associated with Nike, when they are not.

67.    By virtue of the acts complained of herein, La La Land has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and La La Land's or its customers' Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

68.    La La Land's acts complained of herein are willful and deliberate.

69.    La La Land's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless La La Land is preliminarily and permanently enjoined from its wrongful acts.

70.    La La Land's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until La La Land is preliminarily and permanently enjoined from the wrongful acts complained of herein.

COMPLAINT

## COUNT I: DIRECT AND/OR CONTRIBUTORY TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114

71.   Nike repeats, realleges, and incorporates the preceding paragraphs as though fully set forth herein.

72.   La La Land has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products La La Land manufactures, distributes, sources, sells, and/or supplies in the United States, including the Infringing Products. La La Land has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

73.   On information and belief, La La Land manufactured, distributed, sourced, sold, and/or supplied the Infringing Products to others whom it knows or has reason to know are engaging in trademark infringement of the Asserted Marks, and with knowledge that such Infringing Products would be advertised, offered for sale, and sold in the United States. La La Land thus materially contributed to the willful offer for sale and sale of goods that infringe upon the Asserted Marks. As a result, La La Land has infringed Nike's trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74.   Nike has no control over the nature and quality of the Infringing Products that La La Land offers, and Nike's reputation and goodwill will be damaged—and the value of the Asserted Marks jeopardized—by La La Land's continued use of the Asserted Marks and/or confusingly similar marks, and its contribution and/or inducement to others of the same. Because of the likelihood of confusion between La La Land's Infringing Products and the Asserted Marks, any defects, objections, or faults found with La La Land's Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks. As such, La La Land is liable to Nike for infringement of

COMPLAINT

its registered marks under 15 U.S.C. §1114.

75.    As a direct and proximate result of La La Land's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, La La Land will continue to use the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining La La Land and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

76.    Nike is further entitled to recover from La La Land the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of La La Land's wrongful acts.

77.    La La Land's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. La La Land's bad faith is evidence at least by the similarity of La La Land's Infringing Products to the Asserted Marks. Because of the willful nature of La La Land's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

78.    Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

**COUNT II: DIRECT AND/OR CONTRIBUTORY FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(a)**

79.    Nike repeats, realleges, and incorporates the preceding paragraphs as though fully set forth herein.

80.    The Asserted Marks are federally registered and entitled to protection under federal and common law. Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the Asserted Marks have become famous

COMPLAINT

and well-known indicators of the origin and quality of Nike products.

81.   La La Land's unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of La La Land and/or La La Land's Infringing Products by creating the false and misleading impression that La La Land's Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

82.   On information and belief, La La Land manufactured, distributed, sourced, sold, and/or supplied the Infringing Products to others, including at least Warren Lotas, whom it knows or has reason to know are engaging in trademark infringement, false designation of origin/unfair competition, and dilution of the Asserted Marks, and with knowledge that such Infringing Products would be advertised, offered for sale, and sold in the United States.

83.   By manufacturing, distributing, sourcing, selling, and/or supplying the Infringing Products to Warren Lotas and others, La La Land materially assisted or contributed to Warren Lotas' and others' offer for sale and sale of goods bearing the Asserted Marks and/or confusingly similar marks in the United States, which is causing and is likely to continue to cause confusion, to cause mistake, or to deceive the public as to the origin, source, sponsorship, approval or affiliation of Warren Lotas' products. Such conduct therefore constitutes unfair competition, false representation, and a false designation of origin, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.   As a direct and proximate result of La La Land's unlawful conduct, Nike has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill that money cannot compensate.

85.   La La Land's conduct is causing, and is likely to continue to cause, injury to the public and to Nike, and Nike is entitled to injunctive relief and to recover La

COMPLAINT

La Land's actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of La La Land's wrongful acts, and/or an award of La La Land's profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117. Any such damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## COUNT III: DIRECT AND/OR CONTRIBUTORY TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)

86. Nike repeats, realleges, and incorporates the preceding paragraphs as though fully set forth herein.

87. The Swoosh design mark has become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

88. The Swoosh design mark became famous before La La Land used the mark.

89. Because Nike's products bearing the Swoosh design mark have gained a reputation synonymous with fashion, quality, styling, and authenticity, the Swoosh design mark has gained substantial renown.

90. La La Land's use of the Swoosh design mark and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Swoosh design mark in violation of Nike's rights under 15 U.S.C. § 1125(c). La La Land's wrongful use of the Swoosh design mark is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Swoosh design mark.

91. Upon information and belief, La La Land manufactured, distributed, sourced, sold, and/or supplied the Infringing Products bearing the Swoosh design mark and/or confusingly similar marks to others, including at least Warren Lotas, with knowledge that such Infringing Products would be advertised, offered for sale, and

COMPLAINT

1    sold in the United States.

2         92.    La La Land's manufacture, distribution, sourcing, selling, and/or

3    supplying of the Infringing Products bearing the Swoosh design mark and/or

4    confusingly similar marks it knew would be offered for sale or sold in the United

5    States to Warren Lotas and others materially contributed to the dilution and likely

6    dilution the famous Swoosh design by lessening its capacity to identify and

7    distinguish Nike exclusively as the source for products bearing or provided under the

8    famous Swoosh design.

9         93.    La La Land and its customers such as Warren Lotas have used and

10   continues to use in commerce the Swoosh design mark or confusingly similar marks

11   in connection with the advertisement, promotion, and sale of the Infringing Products.

12        94.    La La Land has materially assisted in Warren Lotas' and others'

13   trademark dilution by its manufacture, distribution, sourcing, sale, and/or supply of

14   the Infringing Products to Warren Lotas and others.

15        95.    As a direct and proximate result of La La Land's trademark dilution and

16   material contribution to others of the same, Nike has suffered, and will continue to

17   suffer unless and until such activity is enjoined by this Court, irreparable damage and

18   inherently unquantifiable injury and harm to its business, reputation, and customer

19   goodwill that money cannot compensate.

20        96.    La La Land's conduct is causing, and is likely to continue to cause, injury

21   to the public and to Nike, and Nike is entitled to injunctive relief and to recover La

22   La Land's actual damages Nike has sustained, is sustaining, and/or is likely to sustain

23   as a result of La La Land's wrongful acts, and/or an award of La La Land's profits,

24   costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117. Any such

25   damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

26   ///

27   ///

28   ///

COMPLAINT

## COUNT IV: UNFAIR COMPETITION
## UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

97.   Nike repeats, realleges, and incorporates the preceding paragraphs as though fully set forth herein.

98.   By reason of the foregoing, La La Land has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

99.   On information and belief, La La Land manufactured, distributed, sourced, sold, and/or supplied the Infringing Products bearing the Asserted Marks to others, including at least Warren Lotas, whom it knows or has reason to know are engaging in trademark infringement, false designation of origin/unfair competition, and dilution of the Asserted Marks, and with knowledge that such Infringing Products would be advertised, offered for sale, and sold in the United States using and/or bearing the Asserted Marks.

100.  By manufacturing, distributing, sourcing, selling, and/or supplying the Infringing Products using and/or bearing the Asserted Marks to Warren Lotas and others, La La Land materially assisted or contributed to Warren Lotas' sale of goods using and/or bearing the Asserted Marks in the United States, which is causing and is likely to continue to cause confusion, to cause mistake, or to deceive the public as to the origin, source, sponsorship, approval, or affiliation of Warren Lotas' products. Such conduct therefore constitutes unfair competition, false representation, and a false designation of origin, all in violation of the California Business and Professional Code, § 17200, *et seq.*

101.  La La Land had knowledge of Nike's superior rights in the Asserted Marks when it manufactured, distributed, sourced, sold, and/or supplied goods bearing the Asserted Marks for sale in the United States.

102.  As a direct and proximate result of La La Land's unlawful conduct, Nike has suffered, and will continue to suffer unless and until such activity is enjoined by

- 21 -

COMPLAINT

this Court, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill that money cannot compensate.

103.  La La Land's conduct is causing, and is likely to continue to cause, injury to the public and to Nike, and Nike is entitled to injunctive relief and to recover La La Land's actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of La La Land's wrongful acts, and/or an award of La La Land's profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117. Any such damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## COUNT V: DIRECT AND/OR CONTRIBUTORY COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

104. Nike repeats, realleges, and incorporates the preceding paragraphs as though fully set forth herein.

105. Nike was the first to use the Asserted Marks. As a result of Nike's continuous promotion and sales of products bearing the Asserted Marks for many decades, the Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products to which the Asserted Marks are applied.

106.  As a result of the experience, care, and service of Nike in producing the products to which the Asserted Marks are applied, these products have become widely known and have acquired a worldwide reputation for fashion, quality, styling, and authenticity. Moreover, the Asserted Marks have come to symbolize Nike's reputation for quality and excellence.

107.  La La Land, with knowledge and intentional disregard of Nike's rights, has manufactured, distributed, sourced, sold, and/or supplied products using the Asserted Marks and/or confusingly similar marks.  La La Land's acts have caused, continue to cause, and/or are likely to cause confusion, to cause mistake, or to deceive the public as to the origin, source, sponsorship, approval, or affiliation of La La Land's products in violation of the common law of California.

108.  La La Land's acts alleged herein and specifically, without limitation, La La Land's use, manufacture, distribution, sourcing, supplying, offers to sell, and/or selling in the United States numerous products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

109.  On information and belief, La La Land manufactured, distributed, sourced, sold, and/or supplied the Infringing Products bearing the Asserted Marks to others, including at least Warren Lotas, whom it knows or has reason to know are engaging in trademark infringement of the Asserted Marks, and with knowledge that such Infringing Products would be advertised, offered for sale, and sold in the United States using and/or bearing the Asserted Marks.

110.  By manufacturing, distributing, sourcing, selling, and/or supplying numerous products that are confusingly similar to products bearing the Asserted Marks to Warren Lotas and others, La La Land materially assisted or contributed to Warren Lotas' sale of goods using and/or bearing the Asserted Marks in the United States, which is causing and is likely to continue to cause confusion, to cause mistake, or to deceive the public as to the origin, source, sponsorship, approval, or affiliation of Warren Lotas' products in violation of the common law of California.

111.  As a direct and proximate result of La La Land's unlawful conduct, Nike has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill that money cannot compensate.

112.  La La Land's conduct is causing, and is likely to continue to cause, injury to the public and to Nike, and Nike is entitled to injunctive relief and to recover La La Land's actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of La La Land's wrongful acts, and/or an award of La La Land's profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117. Any such damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

COMPLAINT

## JURY DEMAND

1.    Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.    A judgment and order that La La Land has willfully (A) infringed, both directly and contributorily, the Asserted Marks in violation of 15 U.S.C. §1114, (B) directly and contributorily used false designations of origin in violation of 15 U.S.C § 1125(a), (C) directly and contributorily diluted at least the Swoosh design mark in violation of 15 U.S.C. § 1125(c), (D) engaged in unlawful, unfair or fraudulent business practices in violation of §§ 17200, *et seq*., of the California Bus. & Prof. Code; and (E) directly and contributorily violated Nike's common law rights in the Asserted Marks.

2.    A judgment and order enjoining La La Land and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with La La Land, during the pendency of this action and permanently thereafter from:

        a.    Manufacturing, having manufactured, sourcing, having sourced, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks or any other marks, names, symbols, or logos which, when sold by La La Land or others who purchase from La La Land and then sell direct to consumers, are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that La La Land caused, or helped cause, to enter the stream of commerce are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or the Asserted Marks;

COMPLAINT

b.   Manufacturing, having manufactured, sourcing, having sourced, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks and/or confusingly similar marks;

c.   Engaging in any act, either directly or indirectly, which is likely to dilute the distinctive quality of the Swoosh design mark and/or injures Nike's business reputation, and contributing and/or inducing others to do the same;

d.   Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

3.   An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4.   An order that La La Land be required to deliver to Nike for destruction any and all shoes, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing the Asserted Marks and/or confusingly similar marks;

5.   An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.   An order that La La Land account to Nike for any and all profits earned as a result of La La Land's acts in violation of Nike's rights,

7.   An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.   An order granting restitution of La La Land's profits earned from its unauthorized use of the Asserted Marks and/or confusingly similar marks in which profits Nike has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

- 25 -

COMPLAINT

9.    An order granting pre-judgment interest on any recovery by Nike;

10.   An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

11.   Granting such other and further relief as is just and proper.


Dated: January 15, 2021            ARNOLD & PORTER KAYE SCHOLER LLP


                                   By:  /s/ Rhonda R. Trotter

                                       Rhonda R. Trotter (SBN 169241)
                                         Rhonda.Trotter@arnoldporter.com
                                       Lauren S. Wulfe (SBN 287592)
                                         Lauren.Wulfe@arnoldporter.com
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       777 South Figueroa Street, 44th Floor
                                       Los Angeles, California 90017-5844
                                       Telephone: (213) 243-4000

                                       Christopher J. Renk (*pro hac vice* to be filed)
                                         Chris.Renk@arnoldporter.com
                                       Michael J. Harris (*pro hac vice* to be filed)
                                         Michael.Harris@arnoldporter.com
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       70 West Madison Street, Suite 4200
                                       Chicago, Illinois 60602-4231
                                       Telephone: (312) 583-2300

                                       Bridgette C. Boyd (SBN 313806)
                                         Bridgette.Boyd@arnoldporter.com
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       601 Massachusetts Ave., NW
                                       Washington, D.C. 20001
                                       Telephone:  (202) 942-6745

                                       Kyle A. Schneider (SBN 326552)
                                         Kyle.Schneider@arnoldporter.com
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       250 West 55th Street
                                       New York, NY  10019-9710
                                       Telephone:  (212) 836-8453

                                       *Attorneys for Plaintiff Nike, Inc.*

- 26 -
COMPLAINT